1  TSAN ABRAHAMSON (S.B. #183753)
   tsan@cobaltlaw.com
2  MATTHEW PASSMORE (S.B. #197462)
   matthew@cobaltlaw.com
3  COBALT LLP
   1912 Bonita Avenue
4  Berkeley, California 94704
   Telephone:  (510) 841-9800
5  Facsimile:  (510) 295-2401

6  Attorneys for Plaintiff
   ZAPIER, INC.
7

8            **UNITED STATES DISTRICT COURT**

9       **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| ZAPIER, INC., | Case No. |
| Plaintiff, | **COMPLAINT FOR** |
| v. | **(1) Federal Trademark Infringement (15 U.S.C. § 1114(1))** |
| MASSLIGHT, INC., and DOES 1 - 10. | **(2) Trademark Dilution (Lanham Act § 43(c), 15 U.S.C. § 1125(c))** |
| Defendants. | **(3) Trademark Infringement (Common Law)** |
| | **(4) Unfair Competition (Cal. Bus. & Prof. Code § 17200)** |
| | **DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION

1. Plaintiff Zapier, Inc. ("Zapier") brings this lawsuit against Defendants Masslight, Inc. and Does 1-10 (collectively "Defendants") for illegally infringing on Zapier's trademarks, illegally diluting Zapier's trademarks, usurping and trading on Zapier's goodwill and reputation, and unfairly and unlawfully competing with Zapier as follows:

2. Zapier (which rhymes with "happier") is a famous technology company and global leader specializing in online automation tools that connect and integrate third party downloadable applications ("apps") and application services. Zapier does so through Zapier specific workflows that a user of the Zapier software can create in order to connect or trigger certain actions among different third-party apps that are integrated through Zapier – which automated workflows Zapier refers to as a "ZAP." As an example, a company can create a ZAP connection integrating multiple apps so that the action of a new patient filling out an intake form on that company's website will autonomously trigger an acknowledgement email to the patient, generate a medical appointment, and then automate forwarding the new user content and appointment to a patient management database, as well as to the company's health management software. The number and types of automated ZAP connections is endless, and each ZAP connection is always an automated workflow on the Zapier platform.

3. Each such connection and integration between third party apps have long been referred to as a "ZAP" and integrate with medical and patient-forward companies including Electronic Medical Records companies like Aesthetic Records EMR, along with popular interactive companies, like Patient Communicator, NextGen Healthcare, Clinicminds, PracticeQ, IntakeQ, and Zoom. In short, the mark ZAP is inextricably tied to the ZAPIER brand and associated with health-related electronic medical content.

4. Zapier owns numerous trademark registrations for ZAPIER around the world, including the incontestable U.S. trademark registration for ZAPIER for use in

connection with "software as a service featuring software for third party online application and data linking" (U.S. Reg. No. 4,466,112). Zapier has been using this ZAPIER trademark since at least as early as 2011.

5. Zapier owns registered trademarks for ZAPIER and other ZAP-formative trademarks in the United States and around the world.

6. Zapier owns numerous trademark registrations for ZAP around the world for use in connection with "Online non-downloadable software that enables users to allow interconnectivity between third party software applications." This includes the U.S. trademark registration number 6,514,852. Zapier has been using its ZAP trademark in commerce since at least as early as 2011. Zapier has registered its ZAP trademark in numerous countries around the world.

7. Defendants have invested in and created a software platform to develop interconnectivity solutions for the management of electronic health records -- commonly abbreviated in the healthcare technology industry as "EHRs" -- a subset of EMRs (electronic medical records).

8. Defendants operate a website promoting its software platform under the trade name and service mark "ZapEHR" and operate a website at <zapehr.com>, which, upon information and belief, it launched in August 2022.

9. Given the similarities in software services and the fact that ZapEHR is confusingly similar in sight, sound and meaning to Zapier's ZAP and ZAPIER trademarks, Zapier reached out to Defendant Masslight in June 2023 to resolve this matter without litigation.

10. Zapier's effort to resolve this matter short of litigation have not been successful.

11. Defendants' use of the ZapEHR trade name infringes upon Zapier's registered trademarks under statutory and common law, dilutes Zapier's trademarks and the goodwill it has spent years developing, and constitutes unfair business practices under

1  relevant California state law.

2      12.    Defendant's use of the ZAPEHR service mark infringes upon Zapier's

3  registered trademarks under statutory and common law, dilutes Zapier's trademarks and

4  the goodwill it has spent years developing, and constitutes unfair business practices under

5  relevant California state law.

6      13.    Defendants have created their ZapEHR software platform as part of a new

7  startup business endeavor. As such, Defendants have no history, goodwill, or other

8  legitimate reason for using Plaintiff's mark ZAP in their ZapEHR mark, other than to

9  illegally extract value from Zapier's trademarks, reputation, and goodwill.

10     14.    Zapier seeks to enjoin Defendants from using the name and service mark

11 ZapEHR, ZAP or any other similarly infringing trade names, and seeks to recover

12 damages caused by Defendants unfair competition and other injury caused by Defendants'

13 infringement and dilution of Zapier's trademark, goodwill, and reputation.

## II.    THE PARTIES

16     15.    Plaintiff Zapier, Inc. is a Delaware corporation with its principal place of

17 business in San Francisco, California.

18     16.    Defendant Masslight, Inc. ("Masslight") is a Delaware corporation with its

19 principal place of business in Washington, D.C. On information and belief, Masslight is

20 the principal investor in ZapEHR, a health technology platform operating a website at

21 <zapehr.com>.

22     17.    Plaintiff Zapier is unaware of the true names and capacities of defendants

23 sued herein as DOES 1-10, inclusive, and therefore sues these defendants by such

24 fictitious names. Zapier will amend this complaint to allege their true names and

25 capacities when ascertained. Zapier is informed and believes and therefore alleges that

26 each of the fictitiously named defendants is responsible in some manner for the

27 occurrences herein alleged, and that Zapier's injuries as herein alleged were proximately

28

caused by such defendants. These fictitiously named defendants are herein referred to as "DOES."

18. The actions alleged herein to have been undertaken by the defendants were undertaken by each defendant individually, were actions that each defendant caused to occur, were actions that each defendant authorized, controlled, directed, or had the ability to authorize, control or direct, and/or were actions each defendant assisted, participated in or otherwise encouraged, and are actions for which each defendant is liable. Each defendant aided and abetted the actions of the defendants set forth below, in that each defendant had knowledge of those actions, provided assistance and benefited from those actions, in whole or in part. Each of the defendants was the agent of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and with the permission and consent of other defendants.

### III.   JURISDICTION

19. This Court has subject matter jurisdiction under 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331, 1338(a), and has jurisdiction over all related state law claims under 28 U.S.C. § 1338(b), supplemental jurisdiction under 28 U.S.C. § 1367(a) and the doctrine of pendent jurisdiction.

20. This Court has personal jurisdiction because the events that are the subject of this lawsuit took place in California, Defendants conduct business, including promoting and offering their product under the ZapEHR service mark and brand, to consumers in the Northern District of California, and Zapier is headquartered in San Francisco, California.

21. Venue is proper in this district under 28 U.S.C. § 1391(b) because Zapier resides in this district and a substantial part of the events giving rise to the action occurred in this district.

22. This action is assigned to the San Francisco Division because the substantial part of the events which give rise to the claim occurred in San Francisco County.

## IV. FACTUAL ALLEGATIONS

**Zapier Has Registered, Uses in Commerce, and Protects ZAPIER and ZAP**

23. Launched to the public in May 2012, Zapier is a technology company that creates automated workflows, allowing information between users' web apps to move and flow automatically. Its core value and business is connecting and integrating third-party apps for its users via software links through its platform known as "Zaps."

24. Zapier is a famous technology company with international reach, with millions of registered users across all 50 U.S. states and 199 countries and territories.

25. Users can use Zapier to connect the applications they use every day and can configure an automated information flow, called a ZAP connection between their various apps and services. A ZAP connection facilities workflow automation.

26. Zapier has continuously used the mark ZAP (and the plural "ZAPS") since at least as early as 2011 to describe the Zapier specific workflows created using the ZAPIER software, and which automate workflows between different third-party apps. Zapier's technology is immensely popular, and its users have created more than 25 million ZAP connections in total.

27. Zapier offers integrations for over 6,000 applications, including with famous brands such as Twitter, Google Sheets, Gmail, Facebook, Salesforce, Shopify, Dropbox, Instagram, LinkedIn and Zoom. In addition, Zapier integrates with electronic medical record (EMR) companies and patient management companies such as Patient Communicator, NextGen Healthcare, Clinicminds, Practice, IntakeQ and many others. Subscribers of Zapier's service can create nearly endless combinations of ZAP connections using Zapier's platform and technology.

COMPLAINT
NO. CV
6

28. Zapier owns an incontestable U.S. trademark registration for the trademark ZAPIER®, U.S. Registration No. 4,466,112, in International Class 042 for "software as a service featuring software for third party online application and data linking."

29. Zapier owns U.S. trademark registration for ZAPIER®, U.S. Registration No. 6,981,085, in International Classes 09 and 42 for downloadable software and software as a service for third-party application ("app") connectivity and integration.

30. Zapier owns a U.S. trademark registration for the trademark ZAP®, U.S. Registration No. 6,514,852, in International Class 42 for "online non-downloadable software that enables users to allow interconnectivity between third party software applications."

31. Zapier owns U.S. trademark registration for its distinctive orange bar which precedes the ZAPIER trademark in Zapier's logo. This orange bar trademark (U.S. Registration No. 6,913,254) is registered in Class 42 for software as a service for third-party app integration and has been in use since July 2022 (the "Orange Bar" trademark). In combination with its ZAPIER trademark, Zapier uses the Orange Bar trademark in branding and marketing material in the following logo:



32. On information and belief, Defendants launched the ZapEHR website at <zapehr.com> in August 2022, which includes the following ZapEHR logo:



33. Zapier's use of its Orange Bar trademark in commerce predates Defendants' use of the ZapEHR logo just above.

34. Defendants' use of the above leading blue rectangle in its logo for ZapEHR (which sounds confusingly similar to "Zapier") makes the logo confusingly similar to Plaintiff's ZAPIER, ZAP, and Orange Bar trademarks.

35. Defendants' use of the ZapEHR logo infringes upon Zapier's ZAP, ZAPIER, and Orange Bar trademarks.

36. In the healthcare technology industry, the letters "EHR" in Defendant's "ZapEHR" trade name is a generic acronym for "Electronic Health Record."

37. Without the generic acronym "EHR", Defendant's mark is ZAP, which is identical and confusingly similar to Zapier's registered trademark for ZAP.

38. With the generic acronym "EHR," Defendant's mark looks like a ZAP connection for automated workflow for electronic health records.

39. Defendants' services related to the automation of electronic health records is so related to Zapier's software automation goods and services as to cause confusion in the marketplace between Zapier's software services and Defendants' software platform.

40. Defendants' use of Zapier's ZAP mark for similar software services infringes upon Zapier's trademark rights, causing dilution in the marketplace.

41. The overall commercial impression conveyed by Defendants' ZapEHR logo is confusingly similar to Plaintiff's ZAP, ZAPIER and Orange Bar trademarks.

42. Defendants improperly benefit from using identical ZAP marks for related services.

43. Defendants improperly benefit from using the above ZapEHR logo with its leading bar design, which is confusingly similar to Zapier's ZAP, ZAPIER and Orange Bar trademarks.

44. Defendants' use of the identical ZAP mark is likely to cause confusion among Defendants' and Zapier's consumers. Defendants' unauthorized and infringing use of ZAP and the logo above will, unless enjoined, cause damage and injury to Zapier's

goodwill and its long-established and registered trademarks for ZAP, ZAPIER and the Orange Bar mark.

45. Defendants' use of ZapEHR and its blue logo will dilute Zapier's strong ZAP and ZAPIER brands by blurring ownership and distinctiveness, and connecting Zapier's brands to Defendants' software, over which Zapier has no control.

46. Defendants' use of ZAP is diluting and will continue to dilute Zapier's strong ZAP brand by blurring ownership and distinctiveness, and connecting Zapier's brand to Defendants' software, over which Zapier has no control.

47. Zapier has been and will continue to be harmed and damaged as a result of Defendants' infringement upon its trademarks.

## FIRST CLAIM FOR RELIEF
### Federal Trademark Infringement (15 U.S.C. § 1114)
### (Against All Defendants)

48. Zapier repeats and realleges each and every allegation of paragraphs 1 through 47 above, and incorporates them by reference as if fully set forth herein.

49. Zapier holds numerous ZAP trademarks worldwide, including a U.S. registered trademark for ZAP for use in connection with "Online non-downloadable software that enables users to allow interconnectivity between third party software applications." Zapier's U.S. Registration number for its ZAP trademark is Reg. No. 6,514,852. Zapier's use of its ZAP trademark in interstate commerce dates back to 2011.

50. Zapier is the senior user of the ZAP an ZAPIER marks. The ZAPIER mark is famous and distinctive and is entitled to protection against dilution by blurring or tarnishment. The ZAP and ZAPIER marks are distinctive, have been used continuously and exclusively for more than 12 years throughout the United States and the world to identify the Zapier's application integration services. Zapier has extensively and

continuously advertised and publicized the ZAP and ZAPIER marks for years, and the marks have a high degree of recognition among consumers and app developers.

51. Defendants commenced the use of the ZAP mark and the ZapEHR service mark and trade name long after Zapier's ZAP and ZAPIER marks had become famous and distinctive, without authorization from Zapier.

52. By using the identical and confusing ZAP mark and ZapEHR service mark and trade name in connection with software integration services related to Zapier's for a new and unproven EHR product, Defendants trade on the distinctive brand and recognition of Zapier's ZAP and ZAPIER marks, which have been used for years to describe the distinctive best-in-class app integration process that Zapier provides and sells.

53. Thus, the use of the identical and confusing ZAP mark and ZapEHR service mark and trade name dilutes and/or is likely to dilute the distinctive quality of Zapier's ZAP and ZAPEIR marks and lessens the capacity of such mark to identify and distinguish Zapier's services. Defendants' use of ZAP in connection with an unproven, untested, and novel electronic health record software platform infringes on Plaintiff's ZAP and ZAPIER trademarks. This use causes confusion in the minds of consumers around the distinctiveness of Zapier's ZAP integration service and its exclusive association with Zapier, thereby harming the value of the ZAP and ZAPIER marks as unique identifiers of Zapier and its services, and directly harming Zapier.

54. At all relevant times, Defendants had actual or constructive knowledge of Zapier's prior use and ownership of the ZAP and ZAPIER marks, based upon Zapier's federal trademark registrations. Defendants' conduct is therefore willful and reflects Defendants' intent to exploit the goodwill and strong brand recognition associated with the ZAP and ZAPIER marks.

55. By the acts described above, Defendants have intentionally and willfully diluted, and/or likely to dilute, the distinctive quality of the ZAP and ZAPIER marks in violation of the Lanham Act.

56. Defendants' wrongful acts will continue unless enjoined by this Court.

57. Defendants' acts have caused, and will continue to cause, irreparable injury to Zapier. Zapier has no adequate remedy at law and is thus and will be damaged in amount not yet determined.

## SECOND CLAIM FOR RELIEF

### Federal Unfair Competition and Dilution (15 U.S.C. § 1125(c))

### (Against All Defendants)

58. Zapier repeats and realleges each and every allegation of paragraphs 1 through 57 above, and incorporates them by reference as if fully set forth herein.

59. Zapier is the senior user of the ZAP and ZAPIER marks, which are famous and distinctive and are entitled to protection against dilution by blurring or tarnishment. The ZAP and ZAPIER marks are distinctive, have been used continuously and exclusively for more than 12 years throughout the United States and the world to identify Zapier's application integration service; Zapier has extensively and continuously advertised and publicized the ZAP and ZAPIER marks for years, and the marks have a high degree of recognition among consumers and app developers.

60. Defendants commenced, without Zapier's authorization, use in commerce of the ZAP and ZapEHR marks in 2021, long after Zapier's ZAP and ZAPIER marks had become famous and distinctive.

61. By using the identical ZAP and similar and confusing ZapEHR marks in connection with a new and unproven electronic health records software product, Defendants trade on the distinctive brand and recognition of the ZAP and ZAPIER marks

1    which have been used for years to describe the distinctive best-in-class app integration
2    process that Zapier provides and sells.

3         62.    Thus, the use of the confusing ZAP and confusing ZapEHR terms dilutes
4    and/or is likely to dilute the distinctive quality of the ZAP and ZAPIER marks and lessens
5    the capacity of such marks to identify and distinguish Zapier's services. Defendants' use
6    of ZAP and ZapEHR in connection with an unproven, untested, and novel product
7    involving electronic health records software is also likely to tarnish the ZAP and ZAPIER
8    marks and cause blurring in the minds of consumers around the distinctiveness of the ZAP
9    software integration service and its exclusive association with Zapier, thereby lessening
10   the value of the ZAP mark as a unique identifier of Zapier and its service.

11        63.    At all relevant times, Defendants had actual or constructive knowledge of
12   Zapier's prior use and ownership of the ZAP and ZAPIER marks, based upon Zapier's
13   federally registered trademarks for ZAP and ZAPIER. Defendants' conduct is therefore
14   willful and reflects Defendants' intent to exploit the goodwill and strong brand
15   recognition associated with the ZAP and ZAPIER marks.

16        64.    By the acts described above, Defendants have intentionally and willfully
17   diluted, and/or likely to dilute, the distinctive quality of the ZAP and ZAPIER marks in
18   violation of the Lanham Act.

19        65.    Defendants' wrongful acts will continue unless enjoined by this Court.

20        66.    Defendants' acts have caused, and will continue to cause, irreparable injury
21   to Zapier. Zapier has no adequate remedy at law and is thus and will be damaged in
22   amount not yet determined.

### THIRD CLAIM FOR RELIEF
### Common Law Trademark Infringement
### (Against All Defendants)

27        67.    Zapier repeats and realleges each and every allegation of paragraphs 1

1  through 66 above, and incorporates them by reference as if fully set forth herein.

2      68.    Zapier has prior rights in the registered trademark and service marks ZAP, ZAPIER and the Orange Bar mark.

    69.    Defendants have infringed or will infringe on the ZAP and ZAPIER marks by using the identical term ZAP and the similar and confusing term and service mark "ZapEHR."

    70.    Defendants use of ZAP has caused confusion and is likely to cause confusion or mistake, or to deceive consumers as to the affiliation, connection or association of Defendants' ZapEHR with Zapier's ZAPIER and ZAP marks, as to the origin, sponsorship, or approval by Zapier of Defendants' service and commercial activities.

    71.    Defendants' infringing activity enables it to benefit unfairly from Zapier's reputation and success, thereby giving Defendants' new, unproven, and untested product sales, use, and commercial value it would not have otherwise.

    72.    Prior to Defendants' use of the infringing mark, Defendants had constructive knowledge of Zapier's business and had constructive notice of Zapier's ZAP and ZAPIER marks.

    73.    Defendants' unauthorized use of the infringing marks is likely, if not certain, to deceive or to cause confusion or mistake among consumers as to the origin, sponsorship, or approval of Defendant's new ZAP and ZapEHR products and/or to cause confusion or mistake as to any affiliation, connection, or association between Zapier and Defendants with respect to ZAP and ZapEHR, which are new and unproven products.

    74.    Defendants' infringement has been and continues to be intentional, willful, and without regard to Zapier's rights in the ZAP and ZAPIER marks.

    75.    Upon information and belief, Defendants will gain profits by virtue of its infringement of the ZAP and ZAPIER marks.

    76.    Zapier will suffer irreparable harm from Defendants' infringement insofar as

its invaluable goodwill is being eroded by Defendants' continuing infringement. Zapier has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, confusion of potential customers and app developers, and goodwill flowing from Defendants' infringing activities. Zapier is entitled to an injunction against Defendants' infringement of the ZAP and ZAPIER marks.

77. Unless enjoined, Defendants will continue their infringing conduct.

## FOURTH CLAIM FOR RELIEF
**Unfair Business Practices (California Business and Professions Code § 17200, *et seq.*)**
**(Against All Defendants)**

78. Zapier repeats and realleges each and every allegation of paragraphs 1 through 77 above, and incorporates them by reference as if fully set forth herein.

79. The acts of Defendants described above constitute unfair competition through unlawful, unfair, or fraudulent business practices and/or unfair, deceptive, untrue, or misleading advertising, as defined by California Business & Professions Code § 17200, *et seq.*

80. Zapier has valid and protectable prior rights in the ZAP and ZAPIER marks. The ZAPIER mark does not serve any function other than to identify Zapier as the source of the product and service. The mark is inherently distinctive, and through Zapier's long and continuous use, has come to be associated solely with Zapier.

81. Defendants' actions are likely to cause confusion as to the source of the services offered by Defendants and is likely to cause others to be confused or mistaken into believing that there is a relationship between Defendants and Zapier with respect to the ZAP mark and ZapEHR software product and that this product is affiliated with or sponsored by Zapier.

82. The above-described acts and practices by Defendants are likely to mislead or deceive the general public and therefore constitute unfair competition in violation of

1  California Business & Professions Code § 17200, *et seq.*

2  83. The above-described acts also constitute unlawful acts in violation of the
3  Lanham Act and are therefore unlawful acts in violation of California Business &
4  Professions Code § 17200, *et seq.*

5  84. Defendants acted willfully and intentionally in using the ZAP and ZapEHR
6  marks with full knowledge of Zapier's prior rights in the ZAP and ZAPIER marks and
7  that it could cause confusion or mistake or deceive customers into believing that there is
8  an affiliation between Defendants and Zapier with respect to the unproven product sold
9  under ZAP and ZapEHR.

10  85. The unlawful and unfair business practices of Defendants described above
11  present a continuing threat to, and are meant to deceive members of, the public in that
12  Defendants will promote their unproven product by wrongfully trading on the goodwill of
13  Plaintiff's ZAP and ZAPIER marks.

14  86. As a direct and proximate result of these acts, Defendants will profit from
15  the strength of the ZAP and ZAPIER marks. Further, Zapier will be injured in fact and
16  will lose market share, money, and profits, and such harm will continue unless
17  Defendants' acts are enjoined by the Court. Zapier has no adequate remedy at law for
18  Defendants' violation of Zapier's rights.

19  87. Defendants should be required to restore to Zapier any and all profits earned
20  as a result of its unlawful and fraudulent actions, or to provide Zapier with any other
21  restitutionary relief as the Court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Zapier prays for relief as follows:

A. A temporary restraining order and orders preliminarily and permanently enjoining Defendants and of their officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with it, and its parents,

subsidiaries, divisions, successor, and assigns, from directly or indirectly infringing upon the ZAP and ZAPIER marks, from using ZAP or ZapEHR as the name for its new software product(s), and from passing off ZAP or ZapEHR as being associated with and/or sponsored or affiliated with Zapier;

B. Actual damages suffered by Zapier as a result of Defendants' unlawful conduct, in an amount to be proven at trial, as well as prejudgment interest as authorized by law;

C. An accounting of Defendants' profits;

D. A judgment trebling any damages award;

E. Punitive damages;

F. Restitutionary relief, including disgorgement of wrongfully obtained profits and any other appropriate relief;

G. Costs of suit and reasonable attorneys' fees;

H. Any other remedy to which Zapier may be entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Zapier hereby demands a trial by jury on all issues raised by the Complaint.

Dated: April 3, 2024

            COBALT LLP

            By: /s/ Matthew Passmore

            Matthew Passmore
            Tsan Abrahamson

            Attorneys for Plaintiff ZAPIER, INC.